**McCAUGHN, Collector of Internal Revenue, v. CARVER.**

Circuit Court of Appeals, Third Circuit. April 27, 1927.

No. 3587.

Internal revenue ⊜8(6)—Transfer of fund in trust held to have been a "sale" for fair consideration, and the fund not subject to tax as part of grantor's estate (Revenue Act 1918, § 402c [Comp. St. § 6336¾c]).

An irrevocable transfer of a fund in trust by a man in pursuance of an antenuptial agreement, the income to be paid to him for life, and after that to his intended wife during her life or widowhood, with remainder over, in consideration of which she relinquished right of dower, held "a bona fide sale for a fair consideration in money or money's worth," within the meaning of Revenue Act 1918, §§ 402c (Comp. St. § 6336¾c), and the fund held not subject to estate tax as a part of the grantor's estate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sale.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Charles Carver, executor of J. Henry Carver, deceased, against Blakely D. McCaughn, Collector of Internal Revenue. Judgment for plaintiffs, and defendant brings error. Affirmed.

T. H. Lewis, Jr., and A. W. Gregg, both of Washington, D. C., for plaintiff in error.

Wm. Clarke Mason and Alex Henry Carver, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This case concerns the taxation of a trust fund created by J. Henry Carver, who died November 30, 1919. On December 18, 1906, he and his intended wife entered into a written antenuptial agreement in pursuance of which he then transferred and paid over to Charles Carver as trustee $40,000 in trust to pay the income thereof to himself for life, thereafter to pay the income to his intended wife during her life or until remarriage, and thereafter to pay the principal to his children, if any, and in default thereof to pay it to such uses and purposes as he might by his will appoint. By the same instrument his intended wife waived all interest in his estate. The instrument was irrevocable, and continued in effect until the death of J. Henry Carver, from which time the income has been paid to his wife. In March, 1922, the Commissioner of Internal Revenue assessed against Charles Carver, as executor of J. Henry Carver's estate, the taxes here in question on the sum so held in trust under the agreement, claiming to do so by section 402, subsection (c), of the Revenue Act of 1918 (Comp. St. § 6336¾c). The tax was paid under protest, and the present suit brought to recover, which recovery was allowed by the court below, and judgment entered against the collector. To review this judgment the present writ of error was sued out.

The pertinent part of section 402, provides: "That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * (c) to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust * * * except in case of a bona fide sale for a fair consideration in money or money's worth." The question here involved is whether this transaction is aptly described by the language "a bona fide sale for a fair consideration * * * or money's worth." It will be observed that this is not the case of a unilateral transfer of property for the benefit of another. It is in no sense a gift, but it is a contract in which each party surrenders some right to the other and acquires some right from the other. Marriage was contemplated. Upon marriage the wife would have certain statutory rights to the property of the husband to participate in all of his estate. So, also, but for the contract, the husband would have had $40,000, and after marriage would have a right while living to dispose of the $40,000 as he saw fit. The husband released and surrendered his absolute control over $40,000 of his alienable property by at once transferring to a third person said sum by an irrevocable contract.

In consideration of the transfer of said sum to such third party and the vesting of her interest therein during her widowhood, and to her children, if any, the wife surrendered all right of participation in the other part of her proposed husband's estate then held or thereafter to be acquired. The $40,000 in question then ceased to be a part of the grantor's estate, and was not a part of it when he died. Did the act of Congress intend that this fund so situate should be taxed as his property at the time of his death? That depends on whether the transaction in substance and effect was a "bona fide sale for a fair consideration in money or money's worth." At first blush one who stood on the literalism of the statute would say that it was not a sale in the ordinary mercantile acceptation of the term.

But we find the definition of a sale in Webster is "the transfer of property * * * from one person to another for a valuable consideration or for a price in money." Was this in substance and effect a transfer of property from the husband to the intended wife for a valuable consideration? The court below thought it was, and we incline to that view that it was a transfer; that it carried the property out of the possession, ownership, and control of J. Henry Carver, and that, too, irrevocably, is clear; that the surrender by the wife of her inchoate right of dower was a sufficient consideration for this transfer is equally clear. No court of equity would set aside such an antenuptial agreement for want of consideration. Under such circumstances it may reasonably be contended that such a transfer as this fell within the spirit and the definition meaning of the word "sale."

The substantial element the law considers is not so much the form as the good faith and the fair construction of the transaction. Seeing, then, that the law is fairly open both to the construction placed upon it by the Commissioner of Internal Revenue, on the one hand, and by the judge below, on the other, and that this uncertainty of construction confronts the application of the law to the state of facts here involved, the general principle that all doubtful constructions must be resolved in favor of the taxpayer would seem to warrant an affirmance of this judgment, if we had—which we do not have—any doubt upon the correctness thereof.

The judgment below is affirmed.